IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DANIEL FLODIN,

            OPINION AND ORDER

        Plaintiff,

            13-cv-853-bbc

    v.

UNITED STATES OF AMERICA,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In April 2010, Glenwood Flodin tripped and fell after he used the restroom at a medical clinic for veterans.  Plaintiff Daniel Flodin is the son of Glenwood Flodin and the administrator for the estate of Glenwood, who died in June 2010.  In this lawsuit brought under the Federal Tort Claims Act, plaintiff alleges that his father fell because of an upturned rug outside the bathroom.  Plaintiff contends that the government may be held liable under Wisconsin's Safe Place statute, Wis. Stat. § 101.11, because the accident occurred at a "place of employment" and a "public building" that the government owns.  In addition, plaintiff contends that the government is negligent for failing to prevent the accident.  In particular, plaintiff says that defendant should have: (1) implemented an "active safety program"; (2) monitored the rugs to make sure they were not upturned throughout the day; and (3) used a rug with adhesive on the back and that had a heavier rubber backing.

      Two motions are before the court.  First, the government has filed a motion for

1

summary judgment on both of plaintiff's claims.  In addition, the government has filed a motion to exclude the testimony of Ronald Pember for various reasons, along with a request for sanctions.  For the reasons explained below, I am granting the government's summary judgment motion with respect to the claim under the Safe Place statute, but I am denying the motion as to the negligence claim.  In addition, I am denying as premature the motion to exclude Pember's testimony.

OPINION

A.  Safe Place Statute

Under Wis. Stat. § 101.11, owners and employers of a "place of employment" and owners of a "public building" have heightened duties to prevent accidents from occurring on their property.  Mair v. Trollhaugen Ski Resort, 2006 WI 61, ¶ 20, 291 Wis. 2d 132, 146, 715 N.W.2d 598, 605 (Safe Place statute "provides a higher duty than the duty of ordinary care regarding certain acts by employers and owners of places of employment or public buildings.").  The government argues that it cannot be held liable under the statute either as an employer or as an owner of a public building.  First, it says that the clinic where the accident occurred does not qualify as a "place of employment."  In addition, although the government concedes that the clinic is a public building that is owned by the United States, the government argues that owners of public buildings do not have responsibility for keeping a rug safe.  I will consider both arguments in turn.

2

1. Place of employment

Under Wis. Stat. § 101.11(1), a "place of employment" is "every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade, or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade, or business, is carried on, and where any person is, directly or indirectly, employed by another for direct or indirect gain or profit." In this case, the parties dispute whether the clinic is a place where "any person is, directly or indirectly, employed by another for direct or indirect gain or profit." Wisconsin courts have construed that portion of the statute as requiring a showing that the structure where the accident occurred is "used for a profit making enterprise." Ruppa v. American States Insurance Co., 91 Wis. 2d 628, 639, 284 N.W.2d 318, 322 (1979). See also Voeltzke v. Kenosha Memorial Hospital, Inc., 45 Wis. 2d 271, 278, 172 N.W.2d 673, 676 (1969) ("The critical factor here, place of employment, is dependent on the profit motive of the defendant."); Haerter v. West Allis, 23 Wis. 2d 567, 570, 127 N.W.2d 768, 770 (1964) ("In the absence of a showing of the profit motive on the part of the city, the city will not be held to the higher standard of care required by the safe-place law."); Kelbley v. Tower Insurance Co., 1989 WL 154395, *3, 152 Wis. 2d 772, 450 N.W.2d 254 (Ct. App. 1989) (unpublished) ("'[P]lace of employment' requires the employment be for 'gain or profit.' The profit motive refers to that of the employer, not that of the employee."); Schmorrow v. Sentry Insurance Co., 138 Wis. 2d 31, 42, 405 N.W.2d 672, 677 (Ct. App. 1987) ("profit motive" is the "critical factor").

As I noted in Ribarich v. United States, No. 14-cv-735-bbc, 2015 WL 1321661, at *3 (W.D. Wis. Mar. 24, 2015), some Wisconsin authority suggests that governmental organizations are categorically exempt from the provision of the Safe Place statute governing places of employment. Ruppa, 91 Wis. 2d at 639, 284 N.W.2d at 322 ("Institutions operated by nonprofit or governmental organizations are not places of employment."); Presser v. Siesel Construction Co., 19 Wis. 2d 54, 64, 119 N.W.2d 405, 411 (1963) (construction site was not place of employment because it was "under the sole control of the government"). However, in other cases, the Wisconsin Supreme Court has stated that some publicly-owned entities may be held liable under the Safe Place statute and that courts should conduct an individualized inquiry to determine whether the intent of a particular organization is to make a profit. Leitner v. Milwaukee County, 94 Wis.2d 186, 191, 287 N.W.2d 803, 805 (1980) ("Because the premises are owned by a county does not, ipso facto, mean that they are not a place of employment."). The parties in this case assume that an individualized inquiry is necessary, so I will do the same.

In arguing that the clinic is not run with a profit motive, the government cites 38 U.S.C. § 1729A, which, as plaintiff admits, "require[s] that amounts collected by VA hospitals be used to furnish medical care to veterans." Plt.'s Br., dkt. #22, at 4. However, plaintiff says that § 1729A does not show whether the clinic "actually operates for direct or indirect profit or gain." Id. Rather, "[t]he statute goes to how any 'profits'—monies collected in excess of expenditures—are spent." Id.

As plaintiff himself acknowledges elsewhere in his brief, whether the clinic "actually"

4

makes a profit is not the relevant question. Haerter, 23 Wis. 2d at 570, 127 N.W.2d at 770 ("The existence or non-existence of an actual profit, of course, is not material."). Rather, the question is whether the government has a profit *motive*. In this case, all the money that the government makes at the clinic must be used to provide medical care or pay expenses of the Department of Veterans Affairs. 38 U.S.C. § 1729A(c)(1). Thus, Congress has established as a matter of law that the purpose of the clinic is to provide services to veterans, not to make money. Cf. Ribarich, 2015 WL 1321661, at *4 (relying on statute to find as matter of law that post office is not run with profit motive).

Even if I assume that § 1729A is not dispositive, plaintiff could not prevail on this claim. Plaintiff agues that the government "has put absolutely no facts into evidence as to the Twin Ports VA Clinic's motive," Plt.'s Br, dkt. #22, at 4, but it is *plaintiff's* burden to prove his claim, not defendant's burden to disprove it. Modrowski v. Pigatto, 712 F.3d 1166, 1169 (7th Cir. 2013); Marion v. Radtke, 641 F.3d 874, 876-77 (7th Cir. 2011). The only reason plaintiff offers to infer a profit motive is that "[n]ot all services offered by the VA are rendered free of charge and the VA renders services in exchange for valuable consideration." Id. at 5 (citing 38 U.S.C. Pt. II. Ch. 11). However, many nonprofit organizations charge for some of their services. This shows only that they have an interest in sustaining themselves, not that they have a profit motive. Waldman v. Young Men's Christian Association, 227 Wis. 43, 277 N.W. 632(1938) ("It is quite immaterial that fees are charged to cover a portion of the charitable purposes of the organization."). Again, because the money the clinic makes must be used to provide services or pay expenses, the

5

existence of fees is not probative of a profit motive.  Voeltzke, 45 Wis. 2d at 280-81, 172 N.W.2d at 678 ("The fact that the hospital organized as a nonprofit corporation did . . . operate so as to have earnings in excess of its expenditures 'which it plows back into the business and into an expansion of its facilities' does not in our opinion make it a business employing others for direct or indirect profit or gain, nor make it an employer maintaining a place of employment within the meaning of the safe-place statute."). Accordingly, I agree with the government that the clinic is not a "place of employment" under the Safe Place statute.

2. Owner of a public building

In interpreting the Safe Place statute, Wisconsin courts have held that the duty of an owner of a public building is more limited than an owner or employer of a place of employment.  In particular, "[a]n owner of a public building is liable only for injury resulting from structural defects and unsafe conditions associated with structure." Ruppa, 91 Wis. 2d at 640, 284 N.W.2d at 322.  See also Rosario v. Acuity & Oliver Adjustment Co., 2007 WI App 194, ¶ 11, 304 Wis. 2d 713, 722, 738 N.W.2d 608, 612; Niedfelt v. Joint School District No. 1 of City of Viroqua, 23 Wis. 2d 641, 647, 127 N.W.2d (1964). A "structural defect" is "a hazardous condition inherent in the structure by reason of its design or construction." Barry v. Employers Mutual Casualty Co., 2001 WI 101, ¶ 28, 245 Wis. 2d 560, 573-74, 630 N.W.2d 517, 523-24.  An "unsafe condition associated with the structure" is a "hazard[] [that] arose from the failure to keep an originally safe structure in

proper repair or properly maintained." Id. at ¶ 27.

In this case, the parties debate whether the turned-up rug plaintiff says his father slipped on was an "unsafe condition associated with structure." Plaintiff says that it was because the floor of the clinic is part of the structure and the rug was "associated" with the floor because the rug was there as part of an effort to keep the floor safe. The government says that a "lifted rug edge is a temporary condition that is unrelated to the structure." Dft.'s Br., dkt. #14, at 11.

The parties cite dueling cases in support of their positions. Plaintiff cites Barry, 2001 WI 101, ¶¶ 4-5, in which the defendant installed vinyl strips on a carpeted stairway to hold the carpeting in place. (The defendant installed the strips after the glue holding the carpet in place began to fail. Id.) The plaintiff alleged that he had fallen because one of the strips had become loose. Id. at ¶ 8. The court concluded that the strips were "associated with the structure" because they were part of an effort to "repair or maintain the stairway." Id. at ¶ 30.

In addition, plaintiff cites Jaeger v. Evangelical Lutheran Holy Ghost Congregation, 219 Wis. 209, 262 N.W. 585, 586 (1935), in which the court held that an owner of a public building could not be held liable under the Safe Place statute for a pile of folding chairs that fell on the plaintiff. The court stated that the duty of the employer does "not apply to temporary conditions having no relation to the structure of the building or the materials of which it is composed." Id. However, plaintiff points to a statement the court made in dicta that, "[w]hen floors have been permitted to become oily, greasy, and slippery, it is held that

this constitutes a failure to maintain the structure in its original integrity." Id.  For that proposition the court cited Pettric v. Gridley Dairy Co., 202 Wis. 289, 232 N.W. 595 (1930), in which the court held in a case under the Safe Place statute that the trial court should have allowed the jury to consider whether an employer could be held liable for leaving a stairway "wet, greasy and slippery."

For its part, the government relies on Juul v. School District of City of Manitowoc, 168 Wis. 111, 169 N.W. 309 (1918), Holcomb v. Szymczyk, 186 Wis. 99, 202 N.W. 188 (1925), and Grabinski v. St. Francis Hospital, 266 Wis. 339, 63 N.W.2d 693 (1954).  In Juul, the court held that the placing of a pail containing hot water, caustic acid and chemical compounds in the passageway of a school building for the purpose of scrubbing the floor is not an act done to "maintain" the building under the Safe Place statute.  In particular, the court stated that the defendant's alleged conduct "must be held to relate to some act more closely related to the structure itself of a building than such an operation as is here involved of keeping the floors of a building clean." Juul, 169 N.W. at 310.

In Holcomb, the court concluded that a landlord did not have a duty under the Safe Place statute to remove ice and snow on steps outside an apartment building.  The court stated that "the statute does not apply to temporary conditions having no relation to the structure of the building or the materials of which it is composed." Holcomb, 202 N.W. at 191.

Finally, in Grabinski, the court held that an owner of a public building could not be held liable under the Safe Place statute for a slippery floor.  The court stated:

8

>Our search of the record reveals no claim of any defects in the floor itself, no claim is made that it was other than level, or that it was improperly constructed or surfaced in any manner. There is no claim that anything was on the floor except some rain water. However, the water upon the floor, so far as the record shows, was a temporary condition unrelated to the structure of the building or the material of which it was composed.
>
>The safe-place statute, as it relates to a public building, does not require the owner to post signs warning of a temporary slippery condition, to provide a non-skid tread because of a temporary condition, or to mop up and remove water created by a natural hazard, such as a rainstorm.

Grabinski, 266 Wis. at 342-43, 63 N.W.2d at 695. In other cases, Wisconsin courts have similarly rejected claims under the Safe Place statute involving slippery floors. Watry v. Carmelite Sisters of the Divine Heart of Jesus, 274 Wis. 415, 419, 80 N.W.2d 397, 400 (1957); Cronce v. Schuetz, 239 Wis. 425, 429, 1 N.W.2d 789, 791 (1942).

Of all the cases cited by the parties, Grabinski seems to be the most on point. Plaintiff argues that an upturned rug is related to structure because the rug is meant to maintain the floor, but if an owner's failure to keep a floor dry is not a failure to maintain, then an owner's failure to straighten a rug on the floor cannot qualify either. Both are temporary conditions that could cause an individual to slip and fall. If anything, plaintiff's argument in this case is weaker than in Grabinski because plaintiff is arguing that the government failed to maintain an object *on* the floor rather than the floor itself.

Plaintiff's reliance on Jaeger, 262 N.W. 585, and Pettric, 232 N.W. 595, is misplaced. As the government points out, Jaeger's holding had nothing to do with the issues in this case and Pettric was about the duties of an employer, which are not limited to defects related to the building's structure.

9

Barry is not instructive either. Although plaintiff points out that the vinyl strips at issue in Barry were not part of the original structure, Barry is distinguishable in two respects. First, unlike the rug in this case, the strips were intended to be a permanent fixture that was part of the structure. Second, in Barry, the stairway itself was deteriorating and the strips were a failed effort to repair the stairway. In this case, plaintiff does not allege that any problem with the floor itself contributed to the accident.

Accordingly, I agree with the government that the allegedly upturned rug was not associated with the clinic's structure within the meaning of the case law construing the Safe Place statute. I am granting defendant's motion for summary judgment as to this claim.

## B. Negligence

To establish common law negligence, plaintiff must show: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." Rockweit v. Senecal, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995). In Wisconsin, everyone owes a duty "to the world at large," Hornback v. Archdiocese of Milwaukee, 313 Wis. 2d 294, 309, 752 N.W.2d 862 (quoting Palsgraf v. Long Island R.R. Co., 162 N.E. 99, 103 (1928) (Andrews, J., dissenting)), whenever it is "foreseeable that his act or omission to act may cause harm to someone." Rolph v. EBI Companies, 159 Wis. 2d 518, 532, 464 N.W.2d 667, 672 (1991) (citation omitted). The defendant breaches this duty of ordinary care if it, "without intending to do harm, does something (or fails to do something) that a

10

reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property." Alvarado v. Sersch, 2003 WI 55, ¶ 14, 262 Wis. 2d 74, 662 N.W.2d 350 (quoting Wis JI-Civil 1005). Negligence is typically an issue for the fact finder, and "summary judgment is uncommon in negligence actions because the court must be able to say that no properly instructed, reasonable jury could find, based on the facts presented, that [the defendant] failed to exercise ordinary care." Lambrecht v. Estate of Kaczmarczyk, 2001 WI 25, ¶ 2, 241 Wis. 2d 804, 807-08, 623 N.W.2d 751, 755-56.

In this case, the government argues that it cannot be held liable for negligence for several reasons: (1) plaintiff has not shown that the government had actual or constructive notice that there was a problem with the rug; (2) plaintiff has not adduced any evidence showing that the government was responsible for lifting the edge of the rug; (3) the government chose the rug at issue because it had qualities designed to avoid accidents such as this one; and (4) Glenwood Flodin's negligence was greater than any negligence by the government. Although the first three arguments are stated separately, they all relate to the same issues, which are whether it was reasonably foreseeable that there would be a problem with the rug and whether defendant exercised reasonable care in preventing an accident. The government raises more arguments in its reply brief, but I have not considered those. Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009) (arguments raised for first time in reply brief are forfeited).

The question is a close one, but I conclude that plaintiff is entitled to present his negligence claim to a jury. As noted above, the issues of negligence and comparative

11

negligence generally are jury questions. Further, plaintiff has identified a number of ways in which he believes defendant should have prevented the accident, including a better quality rug and more frequent inspections. For example, plaintiff cited testimony that the rug was visible from a staffed reception desk, so clinic employees could have seen problems with the rug. Tyman Dep., dkt. #19, at 34-35. (The government objects to this testimony on the ground that Tyman was not an employee of the clinic, but it is not clear why that matters. As someone who delivered the rugs to the clinic and laid them on the floor, he would have personal knowledge of the relevant area.) Particularly because the government's arguments regarding the negligence claim are relatively undeveloped and the government cites no case law with similar facts in support of its negligence argument, it would be premature to resolve this claim as a matter of law.

With respect to comparative negligence, again, the government does not cite any case law. Instead, the government argues generally that Glenwood Flodin was more negligent because he chose to walk to the restroom without asking for assistance. However, because the parties dispute Glenwood's degree of mobility, that issue cannot be resolved on summary judgment.

### C. Motion to Exclude Testimony of Ronald Pember

Ronald Pember is plaintiff's named expert. Because it was unnecessary to consider any of Pember's testimony in resolving the government's summary judgment motion, I am denying as premature the government's motion to exclude Pember's testimony. The

government is free to renew any part of its argument in the context of a motion in limine. The government also seeks sanctions in the form of reimbursement for the cost of deposing Pember, but I am denying that aspect of the government's motion because it cites no authority in support of the request.

ORDER

IT IS ORDERED that

1. Defendant United States of America's motion for summary judgment, dkt. #13, is GRANTED with respect to plaintiff Daniel Flodin's claim under the Wisconsin Safe Place Statute, Wis. Stat. § 101.11. The motion is DENIED as to plaintiff's negligence claim.

2. Defendant's motion to exclude the testimony of Ronald Pember, dkt. #29, is DENIED WITHOUT PREJUDICE.

Entered this 11th day of June, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge